GUTRIDGE v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroads** : DAMAGES : DEFECTIVE APPLIANCES : EXPERT EVIDENCE. In an action by plaintiff against a railroad company for damages for the death of her husband, who was a brakeman on the company's road, and was, by the breaking of a hand-hold, thrown under the cars and killed, while descending a ladder on a moving car, in the proper discharge of his duties, the testimony of a carpenter that, in his opinion, it would have been disclosed by reasonable inspection that the hand-hold was not tightly fastened to the top of the car, was inadmissible, it not being a case calling for the introduction of expert evidence.

2. ———— : ———— : ———— : PLEADINGS. In an action against a railroad company for damages for the death of an employe, caused by a defective appliance, it is not material that the petition allege whether the defect was in the construction, or arose from want of repair, where the alleged defect is pointed out with particularity.

3. ———— : NEGLIGENCE : DUTY TO INSPECT FOREIGN CARS. While it is not the duty of a railroad company, at the time of receiving foreign cars for transportation over its road, to make tests to discover hidden defects in their construction, or in the materials used in their construction, yet it is bound to inspect them, as it must its own, after they have been in use. If such cars have obvious defects which render them unfit for use, they should not be received.

4. ———— : ———— : DUTY OF MASTER TO FURNISH SAFE APPLIANCES. A railroad company is not bound at all hazards to furnish safe machinery, cars, and other appliances. Its duty in this respect is to use reasonable care in maintaining suitable cars and appliances, and it is liable to servants for injuries resulting from defects which are known, or ought to have been known and could have been prevented by the exercise of such care.

*Appeal from Henry Circuit Court.*—HON. JAMES B. GANTT, Judge.

REVERSED AND REMANDED.

*Thos. J. Portis* with *Thos. G. Portis* and *Wm. S. Shirk* for appellant.

(1) The demurrer to plaintiff's evidence should have been sustained. It was alleged in the petition that the defect was in the original construction and there was no evidence to sustain the allegation. The evidence shows that if the hand-hold was insecure it had become so by use and lapse of time. *Current v. Railroad,* 86 Mo. 62; *Ely v. Railroad,* 77 Mo. 34; *Benson v. Railroad,* 78 Mo. 504; *Waldhier v. Railroad,* 71 Mo. 514; *Price v. Railroad,* 72 Mo. 414; *Bullene v. Smith,* 73 Mo. 151. (2) The demurrer to the evidence should have been sustained on another ground: The hand-hold came loose from the car, by reason of all four of the screws by which it was held pulling out of the wood. There is no evidence whatever that it could have been discovered by an examination or inspection, made before the hand-hold pulled off, that it was not reasonably safe and sufficient for the purpose for which it was being used. Without this proof, plaintiff had no case. Pierce on Railways, 370-1-2, 3, and 382; Wood on Master and Servant, sec. 348; *Current v. Railroad,* 86 Mo. 62 and cases cited. (3) It was error to permit the witness, Slack, to give his opinion as a carpenter, that, " from the appearance of the top of the car there, the holes and what he saw," it could have been discovered, by reasonable inspection, that the hand-hold was not tightly fastened to the top of that car, before it broke loose. *Railroad v. Peevy,* 11 Am. & Eng. R. R. Cas. 261; *Gaviske v. Railroad,* 49 Mo. 277; *Koontz v. Railroad,* 65 Mo. 597-8; *Greenwell v. Crow,* 73 Mo. 638; *Eyerman v. Sheehan,* 52 Mo. 221; *Couch v. Railroad,* 28 Am. & Eng. R. R. Cas. 331; *Sparr v. Wellman,* 11 Mo.

230; *Winters v. Railroad,* 39 Mo. 468; *Rosenheim v. Ins. Co.,* 33 Mo. 23; *Brown v. Plank Road Co.,* 89 Mo. 152; Best on Evid., secs. 511, 517. (4) It was not the duty of defendant to inspect the car. Defendant had also the right to assume that the company owning said car, had performed its duties with reference to inspecting such car from time to time, and that, at the time it was placed on defendant's road, it was reasonably safe and sufficient for the purposes for which it was being used. *Ballou v. Railroad,* 5 Am. & Eng. R. R. Cas. 480; *Baldwin v. Railroad,* 50 Iowa, 680; *Mackin v. Railroad,* 135 Mass. 201.

*Fyke & Calvird* and *J. La Due* for respondent.

(1) The demurrer to the evidence was properly overruled. *Buesching v. Gas Light Co.,* 73 Mo. 219; *Baker v. Railroad,* 95 Pa. 211; *Railroad v. Brinson,* 64 Ga. 475; *Railroad v. Delahunty,* 53 Tex. 206. (2) It was the duty of defendant to inspect the car. (3) The testimony of the witness, Slack, was admissible. But if not admissible it was not prejudicial to defendant. *Hicks v. Railroad,* 68 Mo. 329. (4) There is no difference in defendant's duty as between home and foreign cars, in the matter of inspecting, handling, and operating them. *Gottlieb v. Railroad,* 1 Central Rep. 728; *Fay v. Railroad,* 15 N. W. Rep. 241. Furthermore, we think, that, inasmuch as the answer was a general denial, no evidence was admissible to show that the car was a foreign car, there was no such issue in the case. *Hicks v. Railroad,* 68 Mo. 329. (5) It was admitted by defendant at the trial, that plaintiff's husband at the time of the accident was in the proper discharge of his duty. Negligence of the defendant, then, ought to be presumed. *Railroad v. Roach,* 64 Georgia, 635. (6) The instructions were proper. *Condon v. Railroad,* 78 Mo. 569; *Porter v. Railroad,* 71 Mo. 66.

BLACK, J.—Plaintiff sued for damages for the death of her husband, E. B. Gutridge, who was a brakeman on that division of the defendant's road from Sedalia to Parsons. Defendant received a freight car, belonging to the Pittsburg, Cincinnati & St. Louis Railroad Company, at St. Louis, on the first of August, 1884, and on that day, hauled the same to Chamois, and on the next day to Sedalia, and on the third to Montrose, on the Sedalia and Parsons division. On the eighth of the same month, a train on which Gutridge was a brakeman, took the car back to Sedalia. The train, before reaching that place, and in starting from the water-tank at Calhoun, broke in two, leaving eight cars attached and fifteen detached from the engine. Gutridge was on the forward portion, and after it ran some distance he signaled the engineer to stop. He then got a pin or link, walked on top of the cars to the rear one, being the car in question. This car had a ladder attached to the rear end and a hand-hold at the top, fastened on the top of the car. He attempted to go down the ladder to make the coupling while his division was moving backwards to the detached section; but the hand-hold came loose, and he fell to the track, and was killed by the cars running over him.

It was the duty of the deceased to go up and down the ladder while the cars were in motion, and there is no evidence of any negligence on his part. No evidence was offered as to whether the car was or was not inspected at St. Louis, Sedalia, or any other point.

Mr. Minish testified: "Picked up the hand-hold; it was a small one, just room for one hand to cleverly fit in it; the flat ends were fastened to the top of the car with screws about two inches long. The screws looked rusty and bad; they looked almost as much like nails as they did like screws; were filled up with rust, and looked as if they had been working loose from the

wood ; the screws were pulled out of the wood ; did not examine top of car." Mead, the conductor, says : " The hand-hold was handed to me ; examined the top of the car ; the hand-hold had a foot on each end with two screws through each foot, not bolts ; the screws appeared to be old and rusty ; the holes in the wood looked old ; that is the only thing I noticed about them." On cross-examination, he says the screws remained in the hand-hold ; that while it was in place the threads and wood around the screws would not be visible.

Mr. Slack, a carpenter, stated that he climbed to the top of the car and examined it only immediately around the hand-hold ; that the holes where the screws had been seemed to be larger than the screws, and that a splinter had been raised at one hole, and the wood was decayed. After stating that he was familiar with the manner of fastening iron to wood with screws, he was asked this question: " From appearance of the top of the car there, the holes and what you saw, you can state to the jury whether in your opinion it could have been disclosed, by reasonable inspection, that that hand-hold was not tightly fastened to the top of that car before it broke loose." A. " Yes, it would."

1. There are exceptions to the general rule that witnesses must state facts and not give their opinions, as where the subject of inquiry is so indefinite and general in its nature, as not to be susceptible of direct proof. *Eyerman v. Sheehan*, 52 Mo. 222 ; *Greenwell v. Crow*, 73 Mo. 638. But such is not the case here. There is no evidence tending to show that the defendant, or any of its agents, knew the hand-hold was defectively attached. If the plaintiff recover, it is on the ground that, by reasonable and ordinary care in inspecting cars, the defect would have been discovered. The witness was allowed to testify to the very thing which the jurors were called upon to determine from the facts, not from the opinion of this or any other witness. His opinion practically

ruled the whole case, if believed. It was substituting his opinion for the judgment of the jurors. There was no fact in the case, which, for its solution, called for scientific or professional knowledge, or for any peculiar knowledge or experience. The subject of inquiry was one upon which men of common information were capable of forming a judgment. It was, therefore, not a case for expert evidence. *Gavisk v. Railroad*, 49 Mo. 274; *Rosenheim v. Ins. Co.*, 33 Mo. 230. We cannot say this evidence was harmless. The evidence, especially where the case is as close as this one is, should be free from such objections.

2. It is objected, by way of a demurrer to the evidence, that the case should have been taken from the jury, because there is no evidence that the defect could have been discovered by an examination or inspection. The car was an old one. The hand-hold was fastened with screws in common use, not bolts. All this was in plain view. There is some evidence that the screws had become loose in the wood. The car was received to be transported over different sections of the defendant's road, and we cannot say there was no evidence on the issue just stated.

3. Another objection, made on the demurrer to evidence, is that the petition counts on an original defective construction of the hand-hold, while the evidence shows it became defective from use and lapse of time. The substantial averments of the petition are : "That said hand-hold was not safe and sufficient, but was defective and insufficient, and was insecurely fastened to the top of said car, and by reason of said defectiveness, insufficiency, and insecurity, said hand-hold broke, and by reason of its breaking, plaintiff's said husband fell," etc. That defendant, disregarding "its duty in the premises, negligently furnished and supplied an unsafe, defective, insecure, and insufficient hand-hold upon said car there used and operated by it as aforesaid, by reason

whereof, and of defendant's negligence," etc.    We do not see any merit in this objection.    The petition is substantially like that in the case of *Condon v. Railroad,* 78 Mo. 568, which was held to be sufficient.    Here the alleged defect is pointed out with reasonable particularity, and that is sufficient.    As a matter of pleading it is not material whether the defect was in the construction or arose from want of repair, the alleged defect being pointed out with particularity.

4.    The defendant contends that it had a right to assume that the car, being a foreign one, was reasonably safe and fit for the uses for which it was being used. We do not agree to the proposition as thus broadly stated.    If the car had obvious defects which rendered it unfit for use, defendant was under no obligation to receive it, and should not have received it.    Cars coming from one road to another must necessarily be subjected to wear and are liable to be rendered unfit for use in the course of transportation, and this must be known to the receiving company.    It is but the result of the most common observation.    While it is not incumbent on the receiving company, on the receipt of the car, to make tests to discover hidden defects, in the construction, or in the materials used in the construction, still it is bound to inspect foreign cars just as it would and is required to inspect its own, after they have been in use.    This duty devolves upon the company as much in the one case as in the other.    While there are authorities which would seem to lead to different results, yet this, we think, is the better doctrine.    The liability for a failure to inspect, or for the want of a proper inspection, is the same in the one case as in the other.    *Gottlieb v. Railroad,* 1 Cent. Rep. [N. Y.] 728; *Fay v. Railroad,* 15 N. W. Rep. [Minn.] 241.

5.    As this case must be remanded, it may be well enough to say, in reference to the abstract proposition

stated at the beginning of the plaintiff's instruction, that the defendant is not bound at all hazards to furnish safe machinery, cars, and other appliances. The duty in this respect is to use reasonable care to maintain suitable cars and appliances, and it is liable to servants for injuries resulting from defects which are known, or ought to have been known, and could have been prevented by the exercise of such care.

The judgment is reversed and the cause remanded. Ray, J., absent; Brace, J., dissents. The other judges concur.