## GUTRIDGE v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

### DIVISION TWO.

1. **Practice**: ISSUE OF FACT: JURY. Where there is any substantive evidence on an issue of fact, its determination is a matter for the jury.

2. **Negligence**: RAILROAD: DEFECTIVE APPLIANCE. Whether the railroad could by the exercise of ordinary care have discovered the defect in the handhold on its car which caused the accident was a question, under the evidence in this case, for the jury.

3. ——— : ——— : ———. It is the duty of a railroad to furnish reasonably safe appliances for its servants' use in the performance of their duties and to exercise ordinary care in keeping them in repair.

4. ——— : ——— : SERVANT'S DUTY. The servant must on his part exercise ordinary care in their use.

5. ——— : DEFECTIVE APPLIANCE : INSPECTION. While the master is bound to look for defects in the appliances, the servant is only required to discover such defects as the ordinary use of the appliances would discover to a man of ordinary prudence.

6. ———— : ORDINARY PRUDENCE : INSPECTION. Ordinary prudence in the matter of inspection requires the master to adopt such reasonable methods and to apply such reasonable tests as are likely to discover the defects in the appliances if they exist.

7. ———— : ———— : ————. The master is not necessarily excused from further inspection, if he could not see the defects.

8. ———— : ———— : QUESTION FOR JURY. The supreme court will not disturb the finding of the jury on the question whether the servant at the time of the accident was engaged in the prudent and careful discharge of his duties in his employment.

9. ———— : DEFECTIVE APPLIANCE : EVIDENCE. In an action for injuries resulting from a defective handhold on a car, it is competent for the plaintiff to show the manner in which the handhold was fastened to the car and the condition of the screws and wood immediately after the accident.

*Appeal from Henry Circuit Court.* — HON. D. A. DEARMOND, Judge.

AFFIRMED.

*H. S. Priest* and *W. S. Shirk* for appellant.

(1) Defendant's demurrer to the plaintiff's evidence, and its instruction in the nature of a demurrer to the whole case, should have been given. *First.* The doctrine that an employe cannot recover for an injury occasioned by a latent defect, unless the defendant knew it, or could have discovered it by the exercise of reasonable care, is so firmly and familiarly established in this state that a citation of authorities is scarcely justifiable. But see *Corey v. Railroad,* 86 Mo. 635; *Elliott v. Railroad,* 67 Mo. 272; *Murphy v. Railroad,* 71 Mo. 202. *Second.* The mere fact that the handhold pulled loose does not as between master and servant raise a presumption of negligence on the part of the master, nor does it, without more, justify a verdict against the master. Wood on M. & S., sec. 419; *Railroad v. Higgins,* 36 Mo. 418; *Shultz v. Railroad,* 36 Mo. 13; *DeGruff v. Railroad,* 76 N. Y. 125; *Railroad*

*v. Milliken*, 8 Kan. 647 ; *Railroad v. Froesch*, 68 Ill. 545 ; *Duffy v. Upton*, 113 Mass. 544. *Third.* This case is entirely unlike the case of *Condon v. Railroad*, 78 Mo. 567. (2) Gutridge was guilty of such carelessness and recklessness in attempting to get down from the car, and which was the direct cause of his death, as precludes a recovery in this case. And this for two reasons : *First.* He "swung" himself off the roof of the car, thus subjecting the handhold to an unusual and unnecessary strain. *Second.* In voluntarily attempting to descend from the car, while it was in motion, upon a ladder on the end of the car. There is no evidence that the ladder and handhold were intended for use while the car was in motion. To the contrary, the evidence shows that it was entirely optional with him whether he could descend whilst the car was moving, or wait until it stopped and then get down. *Turner v. Railroad*, 74 Mo. 602 ; *Cunningham v. Railroad*, 12 Am. & Eng. R. R. Cas. 217 ; *Railroad v. Elliott*, 98 Ill. 481. (3) It was error to permit the plaintiff to introduce evidence as to the appearance of the handhold, and of the screws, and of the wood in which they had been imbedded, after it was pulled loose from the car. The question was, could the defendant have discovered, by a reasonable inspection of the handhold, before it was pulled off, that it was unsafe, etc., and it was not bound by appearances after it was pulled off, and such evidence tended to prejudice the jury. *Elliott v. Railroad*, 67 Mo. 272 ; Rorer on Railroads, pp. 1200 and 1201 ; *Salterle v. Railroad*, 3 Hun, 348 ; *Payne v. Railroad*, 9 Hun, 526; *Dougan v. Trans. Co.*, 56 N. Y. 1 ; *Dall v. Railroad*, 73 N. Y. 468 ; *Stoher v. Railroad*, 91 Mo. 504. (4) It was error to permit the witness, Mead, and other witnesses, to testify that it was customary and usual for brakemen to get off of a car in the manner in which Gutridge did. The servant has no right to establish for himself a dangerous rule of conduct which will bind the master. The evidence of Mead was very prejudicial to

defendant. Thus Mead was permitted to usurp the function of the jury, and substitute his judgment for theirs, and thus decide the question for them. None of the cases permit this. *Freight Co. v. Stanard*, 44 Mo. 71; *Whitsell v. Railroad*, 22 Am. & Eng. R. R. Cases, 336; *Jeffrey v. Railroad*, 5 Am. & Eng. R. R. Cases, 568. Mead was a conductor and in defendant's employ, and his evidence on this point must have controlled the jury. ( 5 ) The accident occurred in full daylight, and Gutridge's opportunity to observe any defect in the handhold was at least equal to that of any car inspector or other servant of defendant. If so, he must be deemed to have assumed the risk. *Dale v. Railroad*, 53 Mo. 455; *Smith v. Railroad*, 69 Mo. 32; *Cummings v. Collins*, 61 Mo. 520.

*Fike & Calvert* for respondent.

( 1 ) It was defendant's duty to provide reasonably safe appliances to enable Gutridge to discharge his perilous duties with safety. He had a right to presume that it had discharged its duties in that behalf. *Parsons v. Railroad*, 94 Mo. 286; *Bowen v. Railroad*, 95 Mo. 268; *Johnson v. Railroad*, 96 Mo. 340; *Loeder v. Railroad*, 100 Mo. 673. It was defendant's duty to have inspected the car. *Bowen v. Railroad, supra; Gutridge v. Railroad*, 94 Mo. 468. ( 2 ) It is the duty of a railroad company to keep its rolling stock, machinery and appliances in good and safe condition, to cause as frequent and thorough inspection of these as can be done consistently with the conduct of its business, for the purpose of discovering any defects that may occur from accidental causes, or the effects of wear and tear, or the progress of decay, and to adopt such rules and regulations as are calculated to guard against accidents, and to make the servants in its employ reasonably safe. *Miller v. Railroad*, 26 Pac. Rep. 70; *Porter v. Railroad*, 71 Mo. 66; *Railroad v. Conroy*, 68

Ill. 560 ; *O'Donnell v. Railroad*, 59 Pa. St. 239 ; *Railroad v. Jones*, 30 Kan. 601. ( 3 ) Defendant cannot now complain of the action of the court in overruling its demurrer to the evidence ; by offering evidence on its own behalf the demurrer to the evidence was waived. *Bowen v. Railroad*, 95 Mo. 275 ; *Kelly v. Railroad*, 95 Mo. 279 ; *McPherson v. Railroad*, 97 Mo. 253. ( 4 ) Gutridge was not guilty of contributory negligence. *Wilkins v. Railroad*, 101 Mo. 93. ( 5 ) It was proper to permit plaintiff to prove the condition of the top of the car, and of the wood around where the handhold had been, immediately after the accident. ( 6 ) There was no error in admitting the testimony of witness Mead. Defendant did not object to the question until after it was answered. The only reason then assigned was that it was irrelevant and incompetent, and no exception was saved to the action of the court in passing upon it. *Keim v. Railroad*, 90 Mo. 314 ; *Peck v. Chouteau*, 91 Mo. 138 ; *Roe v. City of Kansas*, 100 Mo. 190. ( 7 ) Gutridge was not required to anticipate or look for any defect in the handhold. He had the right to presume that his master had discharged that duty with the same fidelity that he was then using in his master's service. *Parsons v. Railroad*, 94 Mo. 286. ( 8 ) Defendant's demurrer to the whole evidence cannot be considered, because such refusal was not called to the attention of the court in the motion for a new trial. *Atkison v. Dixon*, 96 Mo. 582 ; *Klotz v. Perteet*, 101 Mo. 213 ; *Griffith v. Hanks*, 91 Mo. 109 ; *State v. Rambo*, 95 Mo. 462 ; *State v. Grimes*, 101 Mo. 188.

THOMAS, J.—This cause was reversed on a former appeal because of error in the admission of evidence. 94 Mo. 468. The same questions that were determined on the former appeal are presented to us for decision now. In the opinion of Judge BLACK in this case, when it was here before, the facts are sufficiently stated, so that we do not deem it necessary to repeat them now.

Defendant contends, it is true, that the evidence is materially different now from what it was then, but upon examination we do not find this contention well founded.

Although the question was decided on the former appeal, it has been earnestly urged before us that the trial court ought to have sustained defendant's demurrer to the evidence. We have been pressed in this case, as in many others, to constitute this court a jury for the determination of an issue of fact. This the court has no right to do. It is, of course, our duty to ascertain whether there is any substantive evidence to go to a jury, and, if we find there is, we have no authority to usurp the province of the jury and dispose of the issue of fact raised by such evidence. In this case there is no evidence that defendant knew of the defect in the handhold which gave way and resulted in the death of plaintiff's husband. But could it by the exercise of ordinary care have discovered it? This question was submitted to the jurors by appropriate instructions, and they answered it in the affirmative. Defendant now asks us to declare as a matter of law that defendant could not, under the circumstances of this case, have discovered the defect by the exercise of ordinary care. Judge BLACK, on the former appeal, held that there was sufficient evidence to authorize the submission of the question to the jury, and we see no reason to hold otherwise now. That the evidence tended to prove that the car was an old one, and that the wood where the handhold was attached by means of screws was somewhat decayed, there is no question. But as to the appearance of the wood and the handhold before it came off, there is no evidence, and it is claimed, for that reason, the case ought to have been taken from the jury.

It was the duty of the defendant to furnish reasonably safe appliances for its servants in the performance of their duties and to exercise ordinary care in keeping

them in repair. Defendant is not an insurer of the absolute safety of these appliances. It performs its duties to its employes when it exercises ordinary care in selecting and keeping them in repair. The employe must also exercise ordinary care in their use. The difference in the duty of the master and servant is, the master is bound to look for defects, while the servant is bound only to discover what the ordinary use of the appliance would make known to a man of ordinary prudence. The master is held to know the defect, if by the exercise of ordinary care he might know it. The servant has a right to assume that the master has furnished him safe machinery, unless its condition is such that by the exercise of ordinary care he would have discovered its defects. In this case it is argued that the fact that the deceased did not discover the defect in question is strong, indeed conclusive, evidence that it could not have been discovered by the exercise of ordinary care. There is a wide difference in the inspection of an appliance for the purpose of ascertaining its condition, and the use of the appliance upon the assumption it is safe. It was defendant's duty to inspect this handhold, and, if upon inspection in the usual way, with the usual care in such cases, the defect was not discovered, liability would not have attached. That there was no inspection of this handhold, is beyond question. But it is claimed that inspection would have been fruitless, and we are asked to declare as a matter of law that it would have been fruitless. We cannot do this.

The argument is made that the inspector was required to use his eyes only in the examination of the handhold, and if he could not *see* the defect by *looking*, then defendant's duty was performed, and we are asked to declare that the law required him to do no more. We cannot formulate any rule of law fixing definitely the standard of ordinary care. Every attempt to do it has resulted in failure. What is ordinary care in one case, might be the grossest negligence in another. A

mere glance at one handhold might indicate to an ordinary observer that it was safe, while, on the other hand, a glance might discover its defectiveness, and again the conditions might be such that ordinary prudence would suggest and require a careful scrutiny.  We must not confound what the law requires and what ordinary prudence requires.  In determining whether a master has been ordinarily prudent in the keeping of the appliances he has furnished his servants in repair, many circumstances must be considered.  Their construction, the materials composing them, their age, the uses to which they are put and the dangers attending their use, with many other varying circumstances must all be taken into the account.  In the case at bar, the car was an old one.  The handhold was fastened to the car by screws. It is true the proof shows that this mode of fastening handholds was in common use, but if a railroad company chooses to use this method it must conform its action to the requirements of that method.  It must take notice that screws in wood will become loose ; that wood will rot, and rot especially under iron exposed to the weather, and, when an inspector sees that the handhold is fastened by screws in the wood alone, ordinary prudence requires a more careful examination than if the handhold was screwed down on an iron or other metal plate or was fastened by means of bolts and iron strops.  The fact that the wood is old and the screws are rusty would naturally suggest to an ordinarily prudent man the propriety of a thorough inspection. We cannot concur in the contention that an inspector of a handhold performs his duty under all circumstances by simply using his eyes to detect defects.  We do not say that the law requires him to do more in a given case, nor can we say what tests he ought to apply in all cases ; but we do say that ordinary prudence requires him to adopt such reasonable methods and apply such reasonable tests as are likely to discover defects if they exist.

In *Allen v. Railroad*, 26 Cent. Rep. 297, the supreme court of Utah, through ZANE, C. J., says, "the evidence fails to show that the defect could have been discovered by inspection without the application of manual or other physical force; and we do not think that the inspectors were required to apply such tests to the steps of the ladder, unless some indication of weakness or a defect was perceived upon a careful inspection in the ordinary way by the eye. Undoubtedly the company was required to make use of all reasonable means to discover defects that might endanger human life."

In the case of *Baker v. Railroad*, 95 Penn. St. 211, an employe of a railroad company was killed, while at work, by the breaking of a rope of a derrick in use and belonging to the company. It was shown that the rope actually appeared sound, but had been in use for two or three years, and continually exposed to the weather, and there was evidence that it was actually rotten when the break occurred. There was evidence also that such a rope after exposure for a year or more becomes unsound, although this one betrayed no outward sign of decay. Commenting on this state of facts, Judge SHARSWOOD said: "No doubt a perfectly new rope, and one to all appearances sound, may break, and the master would not be responsible for the consequence, having furnished a rope of the proper size for the purpose, to all appearance, sound. But there was evidence in this case, sufficient certainly to make a question for the jury, that such a rope after having been used for a year or more, and exposed during that time as the one in question seems to have been, was no longer a safe rope, even though it did not outwardly exhibit any signs of decay. The master is bound to know that a rope under such circumstances will only last a limited time. It will not do for him to furnish a sound rope, and then fold his arms until by actually breaking it is demonstrated to be insecure. It will not do to say the servant is bound to know this as well as the master, and

to warn him that after such a time to procure a new rope."

We quote these authorities to show that the master is not always, and under all circumstances, excused if he could not *see* a defect, and if the conditions are such as would excite suspicion in a man of ordinary prudence, he must go further and apply other tests. We know that machinery, and the materials composing it, may be tested in various ways. What the ordinary tests, as applied to railroad appliances, are, is not disclosed by this record ; but we feel satisfied that *looking* is not the only test. The master must use such reasonable tests to discover defects as ordinary prudence suggests. The amount of care required is measured by the circumstances of each case, depending upon the kinds of machinery used, the risks incident to its use, and the hazard of the business in which it is used. Whether the defendant could have discovered the defect in the handhold in this case by the exercise of ordinary care, was a question for the jury, and not for the court, to determine.

II.    As to the contributory negligence of plaintiff's husband we will say that the question, whether he was at the time of his death " engaged in the prudent and careful discharge of his duties under his employment," was submitted to the jury, and the jury having said that he was, we do not deem it our province to interfere.

III.    Defendant contends also that the court erred in permitting plaintiff to prove the condition of the handhold and the car after the accident. This point is not well taken. Plaintiff in order to recover was required to prove, *first*, that the handhold was not safe, and, *second*, that defendant knew, or by the exercise of ordinary care might have known, it was not safe. It seems to us the only method open to plaintiff, to prove the defectiveness of the appliance, was to prove how it was fastened, and what condition the screws and wood

were in immediately after the accident. It was defendant's duty to exercise reasonable diligence to ascertain its condition before it gave way. This evidence was clearly competent. The judgment is affirmed. All of this division concur.