## GEORGE B. NEAR v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### Division Two, July 14, 1914.

1. **EVIDENCE: Sufficiency: Demurrer.** In passing upon the sufficiency of the evidence, when challenged by demurrer, the general rule is that plaintiff's evidence (if not impossible or opposed to the physics of the case or entirely beyond reason) is taken as true and plaintiff is further entitled to the benefit of every reasonable inference of fact arising on all the proof. But this does not relieve plaintiff from the necessity of producing substantial testimony to prove the issues involved. A mere glimmer or spark, a mere scintilla, will not do.

2. **NEGLIGENCE: Master and Servant: Inspection of Freight Cars by Railroad.** As regards liability to its employees, it is the duty of a railroad company to discover dangerous defects in cars and equipment received from other roads, if the defect be such as can be discovered by the exercise of ordinary care.

3. **———: ———: ———: Ordinary Care: Defective Brake.** The plaintiff, a switchman employed by defendant, was injured while setting a tunnel brake on a box car received from another road and previously inspected by defendant. Plaintiff's evidence tended to show that the brake was defective; that after it was broken from one-third to two-thirds of the broken end looked like a fresh break; that the break occurred near the place where the staff entered the brake wheel; that the break was irregular, beginning one-fourth to one-sixteenth of an inch outside the socket of the brake wheel and extending a like distance down into the square portion of the staff covered by the wheel socket; that the old break appeared on the end of the broken portion which extended out of the

socket; and that the staff broke because of said defect while plaintiff was applying the brake, causing him to fall and be injured. Plaintiff testified that he tested the brake when he first boarded the car, and that it sounded all right. *Held*, that plaintiff failed to make a case for the jury, there being no obligation on the defendant to use more than ordinary care in. inspection, whereas only extraordinary precaution, such, for example, as taking the brake to pieces, would have revealed the defect.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich*, Judge.

REVERSED AND REMANDED.

*W. F. Evans* and *Cowherd, Ingraham, Durham & Morse* for appellant.

Plaintiff failed to establish a case. (a) There must be some substantial evidence to uphold a verdict. Dutcher v. Railroad, 241 Mo. 167; McNulty v. Railroad, 166 Mo. App. 461; Champagne v. Hamey, 189 Mo. 729. (b) The only duty resting upon defendants was reasonable inspection. Gutridge v. Railroad, 94 Mo. 474; O'Flanagan v. Railroad, 145 Mo. App. 283; Howard v. Railroad, 173 Mo. 529. (c) The physical facts negative all question of negligence. Champagne v. Hamey, 189 Mo. 726; Phippin v. Railroad, 196 Mo. 343; McClanahan v. Railroad, 147 Mo. App. 409. (d) The custom followed by the railroads of the country in the matter of inspection was the measure of ordinary care. Brunke v. Railroad, 115 Mo. App. 39; O'Mellia v. Railroad, 115 Mo. 221; Kane v. Falk Co., 93 Mo. App. 215; Hunt v. Seal Co., 104 Mo. App. 389; White v. Railroad, 84 Mo. App. 417; Henry v. Railroad, 66 Iowa, 52; Maynard v. Buck, 100 Mass. 40; Reed v. Railroad, 94 Mo. App. 371. The mere breaking of the staff was not in itself proof either of the defect or of negligence in failure to discover the same. El-

liott v. Railroad, 204 Mo. 1; McGrath v. Transit Co., 197 Mo. 104; Yarnell v. Railroad, 113 Mo. 570; Murphy v. Railroad, 115 Mo. 111; Wornstein v. Railroad, 195 Mo. 440; Bowen v. Railroad, 95 Mo. 274; Bohn v. Railroad, 106 Mo. 429; Howard v. Railroad, 173 Mo. 531. (e) To warrant a verdict on an inference of negligence that must be the only inference fairly deducible from the evidence. McGrath v. Transit Co., 197 Mo. 104; Ryan v. McCully, 123 Mo. 646; Fink v. Railroad, 161 Mo. App. 325; Smith v. Bank, 99 Mass. 612; Smart v. Kansas City, 91 Mo. App. 593. The master is entitled to the presumption of ordinary care until negligence is proven. Elliott v. Railroad, 204 Mo. 14; Yarnell v. Railroad, 113 Mo. 570; Murphy v. Railroad, 115 Mo. 111; Hornstein v. Railroad, 195 Mo. 440.

*Boyle, Guthrie, Howell & Smith* and *Jos. S. Brooks* for respondent.

(1) There was substantial evidence to sustain the verdict. It was the duty of the appellant to exercise ordinary care to discover defects in the brake-staff. It was for the jury to say whether or not reasonable and proper care was exercised in the inspection of the brake-staff. The weight of the testimony was a question for the jury. Gutridge v. Railroad, 105 Mo. 520; Dutcher v. Railroad, 241 Mo. 167; Railroad v. Slattery, L. R., 3 App. Cas. 1155; Mosely v. Railroad, 132 Mo. App. 649; Winkle v. Dry Goods Co., 132 Mo. App. 666. (2) It is elementary in this State that a demurrer admits every fact to be true which the evidence in the case tends to prove, whether by direct testimony, or by reasonable deductions to be drawn therefrom. Von Trebra v. Gaslight Co., 209 Mo. 658; Meily v. Railroad, 215 Mo. 586; Hach v. Railroad, 208 Mo. 601; Kinlen v. Railroad, 216 Mo. 155. (3) A demurrer to the evidence should never be given in any case where the facts bearing upon the issues are disputed, or un-

disputed and admit of different constructions and inferences, or about which reasonable minds might differ. Williamson v. Transit Co., 202 Mo. 376. (4) A railroad company is bound to inspect foreign cars just as it is required to inspect its own. Gutridge v. Railroad, 94 Mo. 474. (5) The gravamen of the situation here is not the failure to inspect, but the failure to make proper inspection. O'Flanagan v. Railroad, 145 Mo. App. 283; Gutridge v. Railroad, 105 Mo. 527. (6) The inspector should adopt such reasonable methods and apply such reasonable tests as are likely to discover defects, if they exist. It is not sufficient, merely to look at a brake-staff nine feet from the ground in passing by; such an inspection is not reasonable. It would not be likely to discover defects even if they did exist. Gutridge v. Railroad, 105 Mo. 527; Wood v. Railroad, 187 Mo. 445; Allen v. Railroad, 26 Cent. Rep. 297; O'Flanagan v. Railroad, 145 Mo. App. 281. (7) Ordinary care is great care when there is an extraordinary hazard; what is ordinarily done is not conclusive of due care. Tallman v. Nelson, 141 Mo. App. 484; Jewell v. Powder Co., 166 Mo. App. 567; Hovarka v. Transit Co., 191 Mo. 454; O'Dowd v. Railroad, 166 Mo. App. 669. (8) The standard, by which a given act is to be classified as careful or negligent, is fixed by an inflexible rule of the substantive law, and not by usage or custom. Brunke v. Telephone Co., 115 Mo. App. 38; White v. Railroad, 84 Mo. App. 417; Wigmore on Evidence, sec. 461.

WILLIAMS, C.—This is a suit to recover damages for personal injuries. Plaintiff recovered judgment in the sum of fifteen thousand dollars in the circuit court of Jackson county, Missouri, and defendant appealed. That portion of the petition containing the charge of negligence was as follows:

"The defendant did negligently deliver to and cause the plaintiff to work as such switchman upon a

certain freight car, not owned by defendant, and neg-
ligently failed to properly inspect the same before
causing plaintiff to work on same, which said car was
worn, defective and out of repair in this that there
was upon the said car a certain hand brake consisting
substantially of a wheel revolving upon a shaft or staff
for the purpose of tightening brakes on said car, the
said shaft or crank of which was and had for a long
time theretofore been worn, defective and out of re-
pair, cracked and broken, and but a very small and
insufficient portion thereof remained intact, and same
was not sufficiently strong to resist the application of
a reasonable and proper amount of power used upon
said wheel for the purpose of setting such brakes; all
of which was unknown to the plaintiff but was or could,
by the exercise of due care, have been known to the
defendant.''

The evidence on the part of plaintiff tended to
show the following facts: At the time of receiving the
injuries, plaintiff was an employee of defendant com-
pany, in the capacity of field switchman, in the com-
pany's switch yards in Kansas City, Missouri. His
hours of work were in the nighttime. The duty of the
switch screw, with which plaintiff was working, was
to switch freight cars from the connecting lines onto
the proper tracks of the defendant's switch yards. The
cars from the connecting lines would be attached to
an engine of the defendant company and moved into
the defendant's switch yards and plaintiff, acting as
field switchman, would throw the respective switches
so as to shunt the respective cars upon their proper
switch track destination; that in doing this it some-
times became necessary for plaintiff after letting a
car into the switch track to climb upon the same and
stop it by setting the brakes on the car. Plaintiff was
injured about 2 a. m., and on the night in ques-
tion the switch engine and switch crew with which
plaintiff worked took a ''drag'' of cars (includ-

ing one box car of the Pennsylvania Railroad, which was the car that injured plaintiff), from the connecting tracks of the Chicago, Milwaukee and St. Paul Railroad to the defendant's yards for the purpose of shunting the respective cars of said "drag" into the proper switch destination. It was intended that the Pennsylvania car should be placed on switch track No. 26, but on account of some mistake, not important to the present controversy, plaintiff opened the switch to track No. 27 and the Pennsylvania car was shunted into that switch track. After the car came upon that switch track, plaintiff climbed upon the forward end of said car for the purpose of riding the car down the switch and stopping it at its proper place by setting the brake on the car. This car was equipped with what is known as a tunnel brake. The tunnel brake is attached to the car in the following manner. The brake staff, being a piece of iron about an inch and one-half in diameter, is attached to the end of the car on the outside of the car, approximately five feet above the bottom of the car, and projects out from the car a distance of eight or ten inches. On the outer end of this brake staff the brake wheel, twenty-two inches in diameter, is located, the end of the brake staff being square so as to fit into a square socket in the wheel. The ratchet wheel is attached to this brake staff near the place where the staff enters the end of the car. The brake staff is supported at the outer end by an iron brace or bracket which comes out from the body of the car and encircles the brake staff near the place where it enters the socket of the brake wheel. The brake chain is attached to the brake staff at some point between the ratchet wheel and the brace. The end beams at the bottom of the box car extend out a distance of approximately eighteen inches, which furnishes a platform upon which the person operating the brake may stand. On the night in question, after plaintiff had climbed on the front end of the moving

car, he first tested the brake to see if it was working properly. This was done by turning the brake wheel so that the slack was taken out of the chain and turning the brake until he heard the brake shoes catch on the wheels; that it "sounded all right" and that thereafter the car progressed about three car lengths and up near the place where plaintiff desired to stop the car and then plaintiff commenced to set the brake. While in the act of setting the brake, the brake staff broke in two allowing the brake wheel to drop off, thereby causing the plaintiff to lose his balance and fall in the middle of the track in front of the moving car. The car continued down the track and over plaintiff. At the time of the accident plaintiff was about forty years old, in good health, weighing about 205 pounds. Some of the bones in his left foot were broken or thrown out of place; his right leg was broken between the knee and the hip and his right foot was injured. After the car stopped plaintiff crawled out from under the car and called for help. Describing his injuries at that time, plaintiff says: "I was bruised all over; I had pains all over." He was then taken to the hospital and given treatment. At the time of the trial, which occurred about a year and a half after plaintiff was injured, he weighed about 185 pounds and was unable to walk without the aid of crutches; his right ankle was stiff and his left ankle was very nearly stiff—the bones in both ankles being affected with ankylosis; the muscles of the right leg were somewhat atrophied and the right leg was partly paralyzed. He testified that he could not walk without the aid of crutches and that he had been unable to do any work since the accident and the doctor testified that his injuries were permanent. Plaintiff's evidence further tended to show that the brake staff broke near the place where it goes into the socket of the brake wheel; that the break was irregular, starting at a distance of from one-sixteenth to one-fourth of an inch from the

brake wheel and extending in an irregular manner a similar distance down into the square portion of the brake staff, which was covered by the socket of the brake wheel. Mr. Munson, who was the foreman of the switching crew with which plaintiff was working on the night of the injury, heard plaintiff call for help and went down to where plaintiff was lying on the ground. This witness picked up the brake wheel and examined the place where the staff had broken and said that the cross-section of the portion of the broken staff which had remained in the brake wheel showed that about two-thirds of the break was an old break and the remainder appeared to be a fresh break; that the old break extended to about two-thirds of the circumference of the staff; that the broken portion of the staff projected about one-sixteenth of an inch from the socket of the brake wheel on one edge of the socket and that the fresh portion of the break was down in the socket. Claud M. Donahue was working for the defendant company as a switchman in another part of its yards at the time plaintiff was injured and was present when Mr. Munson examined the brake wheel containing a portion of the broken staff. This witness said that about one-third of the break appeared to be an old break and the rest of the break was bright, appearing to be a new break; that a portion of the brake staff, where the cross-section showed the old break, protruded out of the brake wheel socket about one-fourth of an inch; that "it was broke angling like you would break a stick or anything; there was about one-quarter of an inch was up and the other went back into the square place in the brake wheel." When asked what part of the circumference of the broken cross-section appeared to be an old break he said: "At that time it was about half an inch or something that a way." Plaintiff's evidence further tended to show that it was the custom in the switchyards for the company's car inspectors to inspect the exchanged cars

before the switchman took charge of them. It further appears from the evidence that in making inspections of these cars the inspector makes a memorandum of any defects he discovers and a copy of these memoranda is furnished the railroad company from whom the car is received. Plaintiff introduced as a witness Mr. Robert Morrow, the foreman of the car department of the Chicago, Milwaukee & St. Paul Railroad Company, and this witness produced an inspection sheet, which had been furnished his company by the defendant company, with reference to an inspection made on this car by the defendant's inspector at 3 p. m., the day before the accident. This report showed that there were no side doors on the car; that one end sill and one intersill were broken and that there was a hot box on the brake end of the car and that the car was leaking coke at the right and left side doors. Plaintiff's evidence further tended to show that when brake staffs break or crack, the breaking or crack occurs either at the place where the bolt goes through which fastens the chain onto the brake staff or at the place where the brake staff goes into the socket on the brake wheel. Plaintiff's evidence further tended to show that the brace which came down from the end of the car to hold the brake shaft in line encircled the brake staff at a distance of about one-eighth of an inch to three-eighths of an inch from the hub of the brake wheel. During the progress of the trial, the original wheel containing what purported to be the remnant of the broken brake staff was exhibited to plaintiff's witness Mr. Munson and he was asked if it was the same in appearance as when he examined it on the night plaintiff was injured. He testified that it appeared the same except that the broken portion of the shaft did not appear to project out of the wheel socket as far as it did when he examined it.

Defendant's evidence tended to show the following facts: The brake wheel which was the one

in use on the night in question was introduced in evidence and in the socket of the brake wheel was the square portion of what was purported to be the broken end of the brake staff. This wheel and broken portion of the staff were exhibited in this court upon the oral argument of the case. Defendant's witnesses testified that the brake wheel and the broken portion of the staff were the same in every particular as they were when the break first occurred. The exhibit in its present condition shows that the entire break, at least with reference to the outer surface of the brake staff, is confined within the wheel socket. The surface of the broken staff does not project out of the socket, but in the center of the cross-section of the broken staff a portion projects about one-sixteenth of an inch beyond the level of the socket. Other witnesses for defendant testified that they examined the broken staff a short time after the accident and that the break occurred where the square portion of the staff joins onto the round portion. Mr. Hartman, the blacksmith for the defendant company, testified that he had been doing railroad blacksmithing work for twenty-three years and that he repaired this broken staff after the accident and that this was the only broken staff of that kind that he had ever been called upon to repair. Mr. Zeigler, defendant's foreman of the repair track at the time of the accident, testified that the method of inspecting cars, coming from other roads into the Frisco yards at the time of this accident, which was the same inspection given by all the railroads under similar circumstances, was for the inspector to look for all breaks that he could see with his eye; that brake staffs became cracked by reason of being struck by some object and that if they were struck they will either be bent or break clear off and that the inspector in inspecting the car would look at the brake and if it appeared to be straight and all the parts there he would not give it any further inspec-

tion and that it is not the practice for the inspector to get up near the brake staff and closely scrutinize it; that in his experience he never knew of a brake staff being cracked by being struck by something that was not bent so as to be noticeable by the inspector. John T. Bauch testified that he was car inspector for the Frisco at the time of the accident and that he, together with another inspector, made an inspection of the car in question, the day before the accident, and found the defects therein as shown in the list furnished to the Chicago, St. Paul & Milwaukee Railroad Company. This witness testified that the usual and customary manner of inspecting brakes on cars of this kind was to look up while standing on the ground at the end of the car and that if all the parts of the brake appeared to be in place and the brake did not appear to be bent in any way they would not make any closer inspection and that this was the way he inspected the brake on the car in question. The witness further testified that during his work as an inspector he had never found one of these tunnel brakes broken. The evidence on the part of defendant further tends to show that this manner of inspecting interchanged cars was the one in general use by all railroad companies. Defendant's evidence further showed that the tunnel brakes on cars of this kind are placed five feet and five inches above the end sill of the car and that the end sill is four feet and four inches above the ground, making the brake staff nine feet and nine inches from the ground, and that the brake wheel sets out from the end of the car nine and one-half inches. Mr. Donahue was introduced by plaintiff in rebuttal as an expert to testify to the manner or method in use throughout the country on the various roads with reference to inspecting interchanged cars of this kind that have end brakes. This witness testified as follows: ''They get up to test them (tunnel brakes); get up on the cross-beam timber, that goes across the end of the car,

and twist them up to see that the chains, ratchet wheels, dogs and everything is in working order.''

Appellant contends that plaintiff failed to establish a case and that its demurrer offered at the close of all the evidence should have been sustained.

**Evidence: Sufficiency: Demurrer.**

In passing upon the sufficiency of the evidence, challenged by demurrer, the general rule is that plaintiff's evidence (''if not impossible or opposed to the physics of the case or entirely beyond reason'') is taken as true and plaintiff is further entitled to the benefit of ''every reasonable inference of fact arising on all the proof.'' [Stauffer v. Railroad, 243 Mo. 305, l. c. 316.] But this does not relieve plaintiff of the necessity of producing substantial testimony to prove the issues involved. ''A mere glimmer or spark, a mere *scintilla* will not do.'' [Dutcher v. Railroad, 241 Mo. 137, l. c. 167.]

The negligence charged was that defendant negligently failed to properly inspect the brake.

Plaintiff's evidence tends to show that the brake in question was defective; that after it was broken, from one-third to two-thirds of the broken end had the appearance of an old break and the remainder had the appearance of a fresh break; that the break occurred near the place where the large brake wheel fastened onto the end of the brake staff; that the break was irregular, beginning one-fourth or one-sixteenth of an inch outside the socket of the brake wheel and extending a like distance down into the square portion of the staff covered by the wheel socket; that the old break appeared on the end of the broken portion which extended out of the socket; that the staff broke because of said defect while the brake was being applied by plaintiff, causing him to fall and receive his injuries.

**Negligence: Master and Servant: Inspection of Freight Cars.**

Under the circumstances it was the duty of defendant company to discover the dangerous defects in the cars and equipment received by it from other roads, if the defect was such as could have been discovered by the exercise of ordinary care upon its part. [Gutridge v. Railroad, 94 Mo. 468; same case on second appeal 105 Mo. 520.]

This brings us to the discussion of the vital question raised by this appeal, to-wit, was there substantial evidence tending to show or from which it could be reasonably inferred that the defect in question was one that could have been discovered by defendant by the exercise of ordinary care on its part?

Defective Brake: Ordinary Care.

It is impossible to lay down a rule of conduct which would serve as a test or measure in all cases in ascertaining whether ordinary care had been exercised. This because that which might be found to be the exercise of ordinary care in a given case, with its attending facts and surrounding circumstances, might be negligence when applied to the facts and circumstances in another case. We would be safe in saying, however, that the rule of ordinary care would not require that to be done which would not occur to a reasonably prudent man, under like or similar circumstances, as necessary to be done.

In the case of Gutridge v. Railroad, 105 Mo. 520, l. c. 526-7, it was said:

"We cannot formulate any rule of law fixing definitely the standard of ordinary care. Every attempt to do it has resulted in failure. What is ordinary care in one case, might be the grossest negligence in another. A mere glance at one handhold might indicate to an ordinary observer that it was safe, while, on the other hand, a glance might discover its defectiveness, and again the conditions might be such that ordinary prudence would suggest and require a careful scrutiny. We must not confound what the law re-

quires and what ordinary prudence requires. *In determining whether a master has been ordinarily prudent in the keeping of the appliances he has furnished his servants in repair, many circumstances must be considered. Their construction, the materials composing them, their age, the uses to which they are put and the dangers attending their use, with many other varying circumstances must all be taken into the account."* (Italics ours.)

In the above case the fastenings of a handhold pulled out while the handhold was in the grasp of a brakeman. The handhold was fastened to the wooden part of the car by means of screws. After the screws pulled out it was discovered that the wood around the screws had become rotten by reason of its length of use and exposure to the weather. This rotten condition of the wood could not be seen by inspection with the eye before the accident occurred. The appellant in that case contended that the duty to exercise ordinary care required only an examination of the handhold with the eye and that since the defect was one that could not have been discovered by the eye the court should hold, as a matter of law, that the defect was one which could not have been discovered by the exercise of ordinary care. The court refused to sustain the above contention and held that the question was one for the jury, giving as reasons therefor the fact that defendant was charged with knowledge that wood, especially when under iron and exposed to the elements, would rot and the screws therein would thereby become loosened; that the screws had the appearance of being rusty and the wood the appearance of age and that under such circumstances "ordinary prudence requires a more careful examination than if the handhold was screwed down on an iron or other metal plate or was fastened by means of bolts and iron straps." [Id. l. c. 527.] In other words in that case the very nature of the appliance when considered with the physics of

the attending circumstances, was such as would cause a reasonably prudent man to expect danger or trouble from that source unless it was given more careful attention than simply inspecting the appliance with the eye. But in the present case the situation appears to be materially different. Under the proof in the present case there is no showing or proof from which it could be reasonably inferred that a reasonably prudent man would be led to believe that he might expect trouble or danger from the brake in question and therefore such a condition. as would call for a minute or close scrutiny of the brake. The defect existed in an iron bar which was between an inch and an inch and one-half in diameter. The break occurred within one-sixteenth or one-fourth of an inch of the place where the hub of the, brake wheel extends perpendicularly half an inch from the staff with the radius of the brake wheel extending in each direction from the hub approximately eleven inches. On the car side of this defect the brace and brace socket encircled the staff at a distance of one-eighth or three-eighths of an inch from the socket of the brake wheel so that even if this defect had been visible upon the surface of the staff prior to the accident (a matter concerning which the evidence is entirely silent), yet it is difficult to conceive how the defect could have been seen, located as it was down in the crevice formed by the brace socket and the hub of the brake wheel, except that the brake wheel be removed and a very careful scrutiny had of the end of the staff.

Under the circumstances can it be said that ordinary care would require the removal of the brake wheel and a detailed inspection of the staff at the place where the defect was afterwards found to exist? After careful consideration of the matter, we have come to the conclusion that any inspection which would have revealed the defect in question would have been one measured by the rule of extraordinary care or the

highest degree of care as contradistinguished from ordinary care. The defendant was not required to exercise the highest degree of care and the law does not require the master to become an insurer of the safety of the servant.

In discussing a very analogous situation, the Supreme Court of Alabama, in the case of Campbell v. Railroad, 97 Ala. 147, 1. c. 153, said:

"If one brake should be taken apart and examined, all should; and if all, then every other machine or appliance connected with the train and composed of adjustable parts. To do this would cripple and embarrass the operation of the road beyond any requirement of the law. We are of opinion that such an inspection is an extraordinary duty, called into being only by some exigency which would suggest to the mind of a reasonably prudent person a necessity for its performance."

There is no showing made that defects of this kind are of frequent occurrence and that therefore an existing likelihood of expected danger from that source would cause a reasonably prudent man to examine carefully for the expected or anticipated danger. In fact all the evidence on this point was introduced by defendant and to the effect that they are unusual and in fact very rare, and that when the brake staff does become cracked or broken it is caused by its being struck by some object, which either causes the staff to break entirely off or leaves the staff in a bent condition, sufficient to give the car inspector a warning that the matter requires a more critical examination.

We do not say that the above evidence offered by defendant must be taken as true but it is mentioned to call attention to the fact that plaintiff's evidence wholly fails to establish the opposite and fails to supply substantial testimony from which the opposite could be reasonably inferred and therefore fails to show a situation which would call for such an inspec-

tion as would have revealed the defect in the present case. The burden was upon the plaintiff to prove the issues upon which he seeks a recovery. This duty to furnish proof cannot be aided by conjecture but the fact must appear from substantial evidence or from a reasonable inference arising therefrom.

Plaintiff contends that the inspection sheet furnished by the defendant to the Chicago, St. Paul & Milwaukee Railroad Company shows that the car was defective and that the defects were such as to put the inspector upon notice that the brake required a close examination. But reference to the defects mentioned in the inspection sheet discloses that the defects therein mentioned were upon parts of the car wholly disconnected and apart from the brake staff and were not such as to cause special attention to be directed to the brake.

Plaintiff introduced, as an expert, a witness who testified concerning the manner or method in general use by the various railroads of the country in inspecting brakes of this character. This witness testified that the method of inspection in general use was as follows: "They get up to test them, get up on the cross-beam timber that goes across the end of the car, and twist them up to see that the chains, ratchet wheel, dogs and everything is in working order." But it is very apparent from the present record that such an inspection or test of the brake in question would not have disclosed its defective condition. This is precisely what the plaintiff did while riding the car down the yard to its destination. He testified that while riding the car down the yards he tested the brake to see if it was in working order by turning the brake until he heard the brake shoes catch on the wheels and that "it sounded all right." The staff did not break until later when he applied the greater force necessary in setting the brake.

After due and careful consideration, commensurate with the importance of the case, we are unable to reach any other conclusion than that the facts of the situation, *as developed by the present record,* fail to show a situation from which the jury should be entitled to find or infer that the defect was not discovered because of the failure upon the part of defendant to exercise ordinary care, or in other words, the present record fails to show a situation from which it could be found or inferred that the defect in the brake would have been discovered had ordinary care under the circumstances been exercised.

The judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. *Walker, P. J.,* and *Brown, J.,* concur. *Faris, J.,* concurs in reversal but dissents as to remanding.